# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| MARCUS WILHITE | CIVIL ACTION NO. 3:10-cv-0112 |
|    LA. DOC # 474782 | |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| WARDEN BURL CAIN | MAGISTRATE JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Marcus Wilhite, proceeding *in forma pauperis*, filed the instant petition

for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on January 19, 2010.  Petitioner is an

inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is

incarcerated at the Louisiana State Penitentiary. Petitioner attacks his 2003 murder conviction in

the Fourth Judicial District Court, Ouachita Parish.  This matter has been referred to the

undersigned for review, report, and recommendation in accordance with the provisions of 28

U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended

that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28

U.S.C. §2244(d).

### *Background*

Petitioner was convicted of second degree murder on November 3, 2003; the mandatory

sentence of life imprisonment was imposed on June 17, 2004. [Doc. 1, ¶ 1-7; Doc. 1-8, pp. 236-

246] Petitioner apparently did not appeal his conviction within the time limits established by La.

C.Cr.P. art. 914; however, he was granted an out-of-time appeal on April 5, 2005 and, through

appointed counsel, he appealed his conviction to the Second Circuit Court of Appeals, arguing

two assignments of error:  (1) insufficiency of the evidence, and, (2) juror misconduct. [Doc. 1-3, pp. 2-21]

On December 30, 2005, the Second Circuit Court of Appeals affirmed petitioner's conviction and sent Notice of Judgment to petitioner and his attorney. [Doc. 1-3, pp. 41 (Notice of Judgment), 42-58 (Slip Opinion); see also *State of Louisiana v. Marcus Dewayne Wilhite*, 40,539 (La. App. 2 Cir. 12/30/2005), 917 So.2d 1252.]

Petitioner's application for writs raising claims of insufficiency of the evidence and juror misconduct was denied without comment by the Louisiana Supreme Court on November 9, 2006. [Doc. 1, ¶9(g); Doc. 1-3, p. 62; see also *State of Louisiana ex rel. Marcus Wilhite v. State of Louisiana*, 2006-1078 (La. 11/9/2006), 941 So.2d 35] Petitioner did not seek further direct review in the United States Supreme Court. [Doc. 1, ¶9(h)]

On July 21, 2008,[1] petitioner filed a *pro se* application for post-conviction relief in the Fourth Judicial District Court alleging two claims for relief: (1) newly discovered evidence that the State failed to disclose arrangements made with Percy Franklin in exchange for his trial testimony; and (2) ineffective assistance of trial counsel based on counsel's failure to call a witness – Darian Willis –  who would have testified that Franklin fabricated his trial testimony to get a deal from the District Attorney.  [Doc. 1-3, pp. 63-74]  On November 7, 2008, the trial judge denied relief, addressing the merits of both claims. [Doc. 1-3, pp. 87-90]

---

[1] In his petition for writ of *habeas corpus*, petitioner alleged that he filed his application for post-conviction relief on February 7, 2008. [Doc. 1, ¶11(a)(3)] However, the document purporting to be petitioner's application for post-conviction relief is dated "... this 7 day of 21, 2008..." [Doc. 1-3, p. 73] and in his memorandum in support of *habeas corpus* petitioner alleged that July 21, 2008 was indeed the date he filed his application for post-conviction relief. [Doc. 1-2, p. 6] Therefore, absent any evidence to the contrary, it will be assumed that petitioner filed his pleading on July 21, 2008.

2

On November 18, 2008,[2] petitioner sought review of the trial court's judgment in the

Second Circuit Court of Appeal. [Doc. 1-3, p. 65, pp. 75-77] On January 14, 2009, his writ

application was denied. *State of Louisiana v. Marcus Dewayne Wilhite*, No. 44,274-KH (La.

App. 2 Cir. 1/14/2009) at Doc. 1-3, p. 92.

On January 22, 2009, petitioner submitted a *pro se* writ application to the Louisiana

Supreme Court. [Doc. 1-3, pp. 93-117] On November 25, 2009, the Supreme Court, citing

La.C.Cr.P. art. 930.8, *State ex rel. Glover v. State*, 93-2330 (La.9/5/95), 660 So.2d 1189, and,

*State ex rel. Hall v. State*, 99-0326 (La.9/24/99), 871 So.2d 1071,[3] denied writs. [Doc. 1-3, p.

118; see also *State of Louisiana ex rel. Marcus D. Wilhite v. State of Louisiana*, 2009-0357 (La.

11/25/2009), 22 So.3d 175]

Petitioner filed the instant petition on January 19, 2010, claiming (1) "Newly discovered

evidence based on facts not known to petitioner or his attorney, that the state failed to disclose

arrangements it made with his key witness Percy Franklin in exchange for his trial testimony...",

---

[2] The pleading is dated "... this 11 day of 18-08..."[Doc. 1-3, p. 77] which must be interpreted to mean November 18, 2008. Further, that is the date petitioner claimed he filed the pleading in question. [Doc. 1-2, p. 6]

[3] La. C.Cr.P. art. 930.8 provides a limitation period of two years for filing an application for post-conviction relief; the limitations period is generally reckoned from the date the judgment of conviction became final under either La. C.Cr.P. art. 914 or 922. Art. 914 requires a defendant to file his motion for appeal within 30 days of sentencing or the denial of his motion to reconsider sentence.

In *Glover*, the Supreme Court determined that an appellate court may raise art. 930.8 time bar *sua sponte*, even if a lower court addressed the merits of the untimely application for post-conviction relief.

In *Hall*, the Louisiana Supreme Court ruled that once a conviction becomes final, subsequent orders granting an out-of-time appeal or writ application do not thereby "unfinalize" the conviction.

Thus, it appears that the Supreme Court determined that petitioner's judgment of conviction became final when the delays for filing direct appeal expired; further, the Court, applying Louisiana law, determined that petitioner's out-of-time appeal did not "unfinalize" the conviction and therefore, petitioner's application for post-conviction relief, filed more than 2 years after the judgment of conviction became final, was time-barred. The Supreme Court's judgment also tacitly rejected petitioner's argument that his claim was predicated upon facts not known to the petitioner or his attorney as provided in art. 930.8(A)(1).

(2) "The petitioner received ineffective assistance of counsel in violation of the Sixth

Amendment ... [when] counsel failed to call a known witness who would have testified, Percy

Franklin had fabricated his trial testimony to get a deal from the District Attorney's Office...";

(3) "The evidence adduced at trial did not support a conviction for second degree murder..."; and,

(4) "The trial court erred in denying the motion for new trial and in sustaining the objection to

the introduction of the audiotape of Kawanna Grey's statements." [Doc. 1-2, pp. 5-6]

### Law and Analysis

### 1. Limitations – 28 U.S.C. §2244(d)(1)(A)

Title 28 U.S.C. §2244(d)(1)(A) provides a one-year statute of limitations for the filing of

applications for *habeas corpus* by persons, such as petitioner, who are  in custody pursuant to the

judgment of a State court.  This limitation period generally runs from "...the date on which the

judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review..." 28 U.S.C. §2244(d)(1)(A).[4]

The statutory tolling provision of 28 U.S.C. § 2244(d)(2)  provides that the time during

which a properly filed application for post-conviction relief was pending in state court is not

counted toward the limitation period.   *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields*

*v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2).  However, any lapse of

time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted

---

[4] Nothing in the record before the court suggests that any State created impediments prevented the filing of the petition. Further, nothing in the record suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. [See 28 U.S.C. § 2244(d)(1)(B) and, (C)]  However, petitioner contends that he is entitled to rely upon the provisions of 28 U.S.C. § 2244(d)(1)(D) and reckon limitations from the date he discovered evidence supporting his claim that his accomplice was offered leniency in return for testifying on behalf of the State.  That claim is discussed more fully in Part 2, below.

against the one-year limitation period  [see *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)] and, of course, the limitations period is tolled only for as long as the state application remains pending in the state's courts.  *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007).  Federal courts may raise the one-year time limitation *sua sponte. Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Petitioner was sentenced on June 17, 2004.  He did not appeal his conviction and sentence within the limitation period established by La. C.Cr.P. art. 914(b); nevertheless, he was granted an out-of-time appeal on April 5, 2005. Once the lapsed appeals rights were reinstated, the 1-year AEDPA limitations period began to run anew. Compare  *Jimenez v. Quarterman*, — U.S. —, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009).

On December 30, 2005, petitioner's conviction was affirmed by the Second Circuit Court of Appeals. *State of Louisiana v. Marcus Dewayne Wilhite,* 40,539 (La. App. 2 Cir. 12/30/2005), 917 So.2d 1252.  Petitioner's application for writs was denied by the Louisiana Supreme Court on November 9, 2006. *State of Louisiana ex rel. Marcus Wilhite v. State of Louisiana* , 2006-1078,  (La. 11/9/2006), 941 So.2d 35. Petitioner did not seek further direct review in the United States Supreme Court. [Doc. 1, ¶9(h)] Assuming  that petitioner's writ application to the Louisiana Supreme Court was timely, petitioner's judgment of conviction "became final by the ... expiration of the time for seeking ...  [direct] review" [28 U.S.C. § 2244(d)(1)(A)], on or about February 7, 2007, when the ninety day period for seeking further direct review in the United States Supreme Court expired. See Supreme Court Rule 13;  *Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999) (The state court judgment is not final for *habeas* purposes until the 90 day period for filing a *writ of certiorari* to the United States Supreme Court has

expired.)

Thereafter, petitioner had one year, or until on or about February 7, 2008, to file his federal *habeas corpus* suit. Petitioner cannot avail himself of the statutory tolling provisions of §2244(d)(2) because he did not file his application for post-conviction relief in the State court until July 21, 2008 [Doc. 1-2, p. 6; Doc. 1-3, p. 73] and by that time the limitations period had long expired. As noted above, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court must be counted against the one-year limitation period. *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)] Petitioner's *habeas corpus* petition is time-barred if the limitations period is reckoned pursuant to the provisions of 28 U.S.C. §2244(d)(1)(A).

**2. Limitations** – *28 U.S.C. §2244(d)(1)(D)*

As noted above, petitioner maintains that the limitations period should be reckoned as provided by §2244(d)(1)(D) – from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." He further identifies the factual predicate of his claim as follows: "... [the] State failed to disclose arrangements it made with his key witness Percy Franklin in exchange for his trial testimony..." The evidence he has submitted to support the claim consists of (1) a letter written by attorney Lavalle B. Saloman to Percy Franklin dated May 29, 2002 [Doc. 1-4, pp. 1-2], (2) a second letter written by Saloman to Franklin dated November 17, 2003 [Doc. 1-4, pp. 3-4], and, (3) a letter and envelope post-marked January 2007 which is purported to have been written by Franklin and sent to Daronghel Smith, Franklin's cousin and a fellow inmate of the petitioner at the Louisiana State Penitentiary. [Doc. 1-4, pp.5-6] However, petitioner does not allege the date on

6

which this information was discovered or could have been discovered exercising due diligence.

See 28 U.S.C. §2244(d)(1)(D).

In any event, petitioner cannot rely upon this provision because the record establishes that

he and his attorney were aware of the factual predicate – that the State failed to disclose the

"deal" it made with Franklin in exchange for his testimony at petitioner's trial –  at the time of

trial – a date that actually precedes the date used to reckon limitations above.  Indeed, at the trial,

petitioner's attorney examined Percy Franklin,[5]  Saloman[6], and Judge Harrison[7], the District

_____

[5] Franklin originally testified that he had no expectation of leniency as a result of his testimony at petitioner's trial. [Doc. 1-5, pp. 121-123] Petitioner's attorney later asked Franklin, "And you're telling the Jury now, your sworn testimony to the Jury now ... that you're testifying and saying that Marcus Wilhite did this has nothing to do with your sentencing, is that what you're telling me?" Franklin responded, "[It] ain't got nothing to do with my sentencing, now that I know, nothing... it ain't got nothing to do with it. If the State wants me to cooperate, I'm going to cooperate with the State" [Doc. 1-6, pp. 15-16] Later, while still under cross-examination, the following colloquy occurred:
Q. Is there any reason for you to tell a story about who was involved, that their weren't four people involved in this?
A. You mean, is there reason for me to lie?
Q. Yeah.
A. Not at all.
Q. No reason to lie... Not even to get a better sentence.
A. Not at all. [Doc. 1-6, pp. 29-30]

[6] Petitioner's attorney engaged in the following colloquy with Mr. Saloman:
Q. Okay. And ...  Percy Franklin. Do you represent him?
A. Represent Mr. Franklin. He's ... waiting sentencing.
Q. Did you represent him at the murder trial?
A. Yes.
Q. Okay. Now, there has been some discussion about whether or not the postponement of Percy Franklin's sentencing ... did you secure those postponements?
A. Yes.
Q. And what was the purpose of that?
A. To give ... Mr. Franklin an opportunity to testify in this trial.
Q. And toward what end would Mr. Franklin testify?
A. So that he – so that there would be a recommendation – not a recommendation, – So that the sentencing court would be made aware of his cooperation with the government in testifying.
Q. And for purposes of perhaps if a – if there's a conviction or something he would get a lighter sentence? Is that right?
A. Well, he's already been convicted of manslaughter.
Q. ... That's not what I said, a lighter sentence?
A. Yeah. Hopefully.
Q. Because the sentence on ... manslaughter is from...
A. Zero to forty years.

7

Judge who presided over Franklin's trial, on this very issue.  Further, counsel argued the claim to the jury in his closing arguments.[8]

In other words, petitioner and his attorney were clearly aware of the <u>factual predicate</u> of the claim prior to and during the trial.  Here, petitioner confuses <u>his knowledge of the factual predicate of his claim</u> with his receipt of the  evidence supporting the claim.[9] The implication that

---

Q. Zero to forty years.  <u>So, the purpose of his – these postponements was to have Mr. Franklin testify at Mr. Wilhite's</u> <u>trial in hopes of securing a lighter sentence? Is that right?</u>
A. <u>That would essentially [be] correct, yes.</u>
Q. Now did you go over the testimony of Percy Franklin before he testified in this matter?
A. Only to the extent to tell him to tell the truth.
                         *      *      *
Q. And... have you had any discussions with the State about ... Mr. Franklin's testimony?
                         *      *      *
A. Perhaps... I would imagine, you know ... I really can't say one way or the other...[Doc. 1-8, pp. 91-93]

Thereafter, when asked by the prosecutor if there were "... any guarantees given by the State or by Judge Harrison about what sentence Percy Franklin might get...", Mr. Saloman replied, "Absolutely not." [Id., p. 95]

[7] Judge Harrison advised that Franklin's sentencing had been postponed on joint motion of the State and the defense. When asked, "... <u>did anyone give you the impression that ... Mr. Franklin's testimony ... might be received</u> <u>favorably from his sentence if he testified in the ... trial of the co-defendant, Marcus Wilhite</u>..." Judge Harrison responded, "No." When asked by the prosecutor "... there was no specific sentence agreed upon by the State and the Court..." Judge Harrison replied, "That's correct. He was tried and convicted. Right." [Doc. 1-8, pp. 50-51]

[8] See Transcript, Closing Arguments at Doc. 1-8, pp. 149-152, "Interestingly enough, and I don't want to bore you, but interestingly enough <u>one wonders how the testimony of Percy Franklin came into existence</u>. Now, Percy Franklin went to trial May of ... 2002. You heard Judge Harrison say he had never held a case open this long for sentencing. <u>What was the purpose of Percy Franklin's testimony? Obviously to secure a better deal for himself.</u> <u>He kept postponing</u> it. But, we've got a triangle there. Percy Franklin needs someone to corroborate his story. There is nobody to corroborate any story. He tells, or his lawyer tells the State that ... Joe Orange and Estella Wilson will corroborate the story. That they ... Marcus Wilhite and Percy Franklin came by his house late at night. ... And then there is a lawyer, Val Salomon, for Estella Wilson, for Percy Franklin , for Joe Orange ... <u>But ... obviously what Mr.</u> <u>Salomon was trying to do was trying to get some consideration, as he told you , by delaying Percy Franklin's</u> <u>sentence until Marcus Wilhite's trial had been had. Now, there's nothing wrong with a lawyer doing that. It's</u> <u>perfectly legitimate. But, to delay a case year for sentencing.</u> Except to gain some sort of strategic advantage, and I'm not sure I understand what the strategic advantage was..."

[9] Indeed, the evidence submitted in support of his claim is of dubious value. The May 29, 2002 letter from Mr. Salomon to Mr. Franklin does not demonstrate the existence of any "deal" whereby Franklin was offered a lenient sentence in return for his testimony against petitioner. Indeed, the only "deal" alluded to in the letter was an offer by the State to allow Franklin to plead guilty to manslaughter with the imposition of the maximum sentence of 40 years. [Doc. 1-4, pp. 1-2] The November 17, 2003 letter confirms Salomon's opinion that the fifteen year sentence ultimately imposed was "... the direct result of your testimony at trial." However, far from indicating the existence of a "deal" Salomon's letter explained further, "<u>The Judge obviously reads the newspaper and was aware</u>

8

the one-year period of limitations did not begin to run until the as yet unspecified date petitioner "discovered" the three documents he submitted with his petition is without merit because "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay ... while a *habeas* petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998).[10]

In other words, petitioner was aware of the factual predicate of his claim before and during trial. His subsequent receipt of the Salomon and Franklin letters did not change the

_____

that you were testifying. He also is, of course, aware of the facts of your matter and that your testimony would have been the primary part of the State's case. Indeed, without your testimony, there would have been no case. He thus reached the conclusion that you were not the gunman in this matter, as the jury believed obviously that Wilhite was, and that perhaps there was more to you than your past record would indicate. The District Attorney's Office, of course, indicated that you cooperated fully and truthfully with them and that you have put yourself on the line, as Wilhite has in the past threatened you. Indeed, he told Estella that one of the few mistakes he made in your matter was not killing you. The outcome was that the Judge was willing to consider a further reduction. The result was the fifteen-year sentence." [*Id*., pp. 3-4] Finally, the letter purportedly written by Franklin to his cousin and petitioner's fellow Angola inmate is of limited evidentiary value and, it certainly does not demonstrate the existence of a "deal." First, the letter is not authenticated and there is no reason to believe that it was written by Franklin. Second, even if Franklin were the author, the letter alleged only that his lawyer promised probation in return for his trial testimony. In light of the fact that Franklin was tried on charges of second degree murder, this claim is disingenuous at best. Third, the letter does not indicate that Franklin was offered a deal in return for providing false testimony. Finally, the letter was apparently written and mailed in January 2007. As noted above, petitioner did not allege the date he discovered its existence, nor the date he could have discovered it exercising due diligence. However, there is no reason to believe that the letter could not have been discovered within weeks of its mailing, and, therefore, even if the limitations period is reckoned from any date prior to July 2007, more than 6 months after the letter was written, petitioner's federal petition would still be time-barred under the provisions of 28 U.S.C. §2244(d)(1) since more than one year ultimately elapsed before he filed his application for post-conviction relief on July 21, 2008.

[10] In *Flanagan*, the habeas petitioner was convicted in 1989 and his judgment of conviction became final in February 1991 when the delays for seeking further direct review expired. He filed his federal habeas petition on April 24, 1997, claiming that he was not informed of his right not to testify at his state court trial. He also argued that the limitations period did not begin to run until November 1996, the date he obtained an affidavit from his trial counsel in which counsel claimed to have no recollection of advising petitioner of his right to refuse to testify. The Fifth Circuit rejected his claim as follows, "Flanagan argues that the lawyer's affidavit forms part of the factual predicate of his suit because, by not conclusively negating the proposition, the affidavit implicitly supports Flanagan's claim that he was not informed of his right not to testify. Flanagan is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim. Trial counsel's affidavit neither changes the character of Flanagan's pleaded due process claim nor provides any new ground for Flanagan's federal *habeas* petition. Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than seven years, while a *habeas* petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan v. Johnson*, 154 F.3d at 198-199.

character of his claim or provide any new ground for relief. In short, petitioner is not entitled to have the period of limitations reckoned as provided by 28 U.S.C. §2244(d)(1)(D).

### 3. Equitable Tolling

The one-year limitation period is subject to equitable tolling but, only in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); see also *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling" (quoting *Davis*, 158 F.3d at 811)).

Neither unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy or any other reason), ignorance of the law, nor even lack of representation during the applicable filing period merits equitable tolling. See *Turner v. Johnson*, 177 F.3d 390, 291 (5th Cir.1999); see also *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (age discrimination case).

The circumstances alleged herein are not extraordinary enough to qualify for equitable tolling under § 2244(d)(1). "Equitable tolling applies principally where the plaintiff is <u>actively misled by the defendant</u> about the cause of action <u>or is prevented in some extraordinary way from asserting his rights</u>." *Coleman v. Johnson*, 184 F.3d 398, 402 (1999), *cert. denied,* 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996) (emphasis supplied). The pleadings do not suggest that petitioner was "actively misled" nor do they suggest that he was prevented in any way from asserting his rights.

Accordingly,

10

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**  because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers,  Monroe, Louisiana, February 24, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

11